UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Civil Action Number:

ANDRES GOMEZ,

    Plaintiff,
vs.

CARVEL CORPORATION,

    Defendant

## COMPLAINT

COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, hereby files this Complaint and sues Defendant Carvel Corporation for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1. Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Carvel Corporation's website (which is an extension of its retail stores) throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land for over twenty-six years.

2. In a world of increasing number of low vision and blind individuals that is expected to double by 2050, it is essential that low vision and blind individuals are not

1

excluded from society and segregated in area of web commerce.

3. This case arises out the fact that the Defendant Carvel Corporation has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and visiting its website, www.carvel.com, which is one of the Defendant's places of public accommodation.

4. The Defendant Carvel Corporation ("Defendant") owns and/or operates (or franchises) places of public accommodation which are novelty ice cream retail stores under the brand name "Carvel"(also referred to as "Carvel stores"). The Defendant's Carvel stores offer for sale to the general public soft serve ice cream, ice cream cakes which feature a layer of distinctive 'crunchies,' ice cream bars, and ice cream sandwiches. Heretofore, referenced as "merchandise" and/or ice cream.

5. The Defendant offers an adjunct website www.Carvel.com ("website") which is directly connected to its Carvel stores since the website provides a site locator to the Defendant's Carvel store physical locations (places of public accommodation) and the ability to order Carvel's signature customized ice cream cakes online and then go to a selected Carvel store location to pick up the Carvel signature customized ice cream cake. Thus, www.carvel.com ("website") has a true nexus to the Defendant's Carvel stores.

6. This is an action to put an end to civil rights violations committed by Defendant Carvel Corporation. against individuals with disabilities who are visually impaired and who cannot access and comprehend the internet and the websites that operate therein without the aid of assistive technology.

**JURISDICTION & VENUE**

7. This is an action for declaratory and injunctive relief pursuant to Title III

of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

8. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to the Defendant's internet website, which provides the general public with adjunct services to the Defendant's physical Carvel store as well as to permit the general public the ability to order Carvel's signature customized ice cream cakes online.

9. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant resides in this District, the Defendant transacts business in this District, and the acts constituting the violation of the ADA occurred in this District.

10. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

11. Plaintiff Andres Gomez ("Plaintiff Gomez") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

12. Plaintiff Gomez suffers from what constitutes a "qualified disability" under the ADA; 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h). Plaintiff Gomez is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance.

13.     Defendant Carvel Corporation (also referenced as Defendant) is the owner and operator of a chain of retail special stores (which sell ice cream and ice cream novelties) under the brand name "Carvel."

14.     Carvel Corporation is a manufacturer of ice cream and ice cream novelties.  Carvel Corporation also is a retail seller of ice cream and ice cream novelties under the Carvel brand through its owned Carvel store locations, through its franchised Carvel store locations, and through independent grocery stores.

15.     Carvel Corporation was an early participant in the 'franchising' of its Brand.  In 1949, Carvel Corporation became a franchisor of its Carvel ice cream stores, and began franchising under the name "Carvel Dairy Freeze," which has since changed to the name "Carvel".

16.     Carvel Corporation was a leader in the branding of ice cream and ice cream novelties.  Carvel Corporation popularized the ice cream "novelty" such as: the "Flying Saucer" (a circular ice cream sandwich), the "Icy Wycy" (a paper cone of sherbet on a stick), the "Brown Bonnet" and "Cherry Bonnet" (frozen vanilla ice cream on a sugar cone dipped in a sweet, waxy confection), the "Tortoni" (a cup of vanilla ice cream covered with toasted coconut and topped with a maraschino cherry), and the "Lollapalooza[1]" (cylindrical ice cream on a stick covered with colored sprinkles).

17.     Defendant Carvel Corporation is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

## FACTS

18.     The Defendant is defined as a "public accommodation" because it is an entity which owns and operates a chain of ice cream/ice cream novelty stores under the

---

[1] And the related "Mamapalooza" and "Papapalooza."

4

brand name "Carvel," each of which is a "Place of Public Accommodation" which is defined as "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104. (2). Each of the Defendant's Carvel stores are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. The Defendant's Carvel retail stores are also referenced throughout as "place(s) of public accommodation," or "Carvel stores."

19. The Defendant's website www.carvel.com ("website") is offered to provide the general public information including but not limited to information on the various locations of the Defendant's Carvel stores throughout the United States and within the state of Florida.

20. The Defendant owns and/or operates and/or serves as a franchisor for over 530 Carvel stores and the Defendant's Carvel brand merchandise is sold in in over 9,500 supermarkets throughout the United States. The Defendant's website www.carvel.com services the various Carvel locations represented by its Carvel stores.

21. Since the Defendant's website allows the general public the ability to locate one of the many Carvel store locations, the website is an extension of the physical Carvel stores. Therefore, the website has a direct nexus between the website and the Defendant's Carvel stores, hence the website is also characterized as a place of public accommodation; 42 U.S.C. § 12181(7)(E).

22. The website also allows the general public access to select and customize/personalize Carvel ice cream cakes and ice cream novelties online and then select a Carvel store location, date and time for picking up their personalized ice cream

novelty. As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E) and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public. As such, the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[2]

23. Plaintiff Gomez is a long-standing customer of Carvel ice cream novelties. As a customer of Carvel ice cream novelties, Plaintiff Gomez would like to personalize and order Carvel ice cream novelties online as offered through the Defendant's website www.carvel.com.

24. Buying and ordering cakes online in advance is a highly sought after accommodation that help improve the lives of vision impaired people like Plaintiff Gomez, and help them integrate and participate in society.

25. Plaintiff Gomez is a vision impaired person frequently utilizes the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiff Gomez uses commercially available screen reader software to interface with the various websites.

26. In order to comprehend the Defendant's website and to become informed of the Defendant's Carvel brand merchandise (which other plaintiffs may order online), Plaintiff Gomez must use screen reader software, otherwise the programming is and

---

[2] *"The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities."* ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

become inaccessible to him, and the website just becomes another *off limits*, *closed door* to his life.

27.     During May and June of 2016, the Plaintiff attempted to utilize the Defendant's website several times to review the ice cream cake styles available and to customize an ice cream cake online and arrange for pick up at a local Carvel store.  The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

28.     However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

29.     Plaintiff attempted to locate any *Accessibility Notice* or any information relating to the web sites future accessibility plans or information regarding contacting the defendant to alter them to the inaccessibility of their site, but was unable to do so, because no such link or notice was provided[3].

30.     Plaintiff Gomez continues to desire to access the Defendant's website to personalize an ice cream cake and order online, but he is unable to do so as he is unable to comprehend the Defendant's website, thus he will continue to suffer irreparable injury

---

[3] Other online retailers have taken steps to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx

7

from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

31. The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

32. The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

33. The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

34. On information and belief, the Defendant has not designated an employee as a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

35. On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

36. On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

37. On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

38. On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

39. On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

40. On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

41. On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

42. On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

43. On information and belief, the Defendant does not have Web Accessibility Policy.

44. On information and belief, Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[4].

---

[4] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

45. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.carvel.com.

46. Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

47. Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

48. For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society.

49. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website.

50. On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its Carvel ice cream and ice cream novelties available in its various Carvel stores and to personalize and purchase ice cream cakes online.

51.     On information and belief, the Defendant is aware of need to provide full access to all visitors of the Website.[5]

52.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

53.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

54.     Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

55.     According to Statistic Brain Research Institute[6], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.carvel.com and have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

56.     According to the National Federation for the Blind[7], there are 6,670,300 Americans with visual disabilities.

57.     The National Federation for the Blind has also reported that there are 434,600 Americans with visual disabilities living within the state of Florida.

58.     The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiff Gomez. The Defendant is

---

[5] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)

[6] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

[7] Statistics for 2012, see http://www.NFB.org/blindness-statistics

operating in violation of Plaintiff Gomez's rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

59. Plaintiff Gomez has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

60. Plaintiff Gomez will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

61. Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202.

62. The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

63. Plaintiff Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-62 above.

64. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their

sites are fully accessible to individuals with disabilities[8].

65.     As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to the general public on its website www.carvel.com, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

66.     Pursuant to 42 U.S.C. §12181(7)(E), www.carvel.com (the Defendant's website) is a *place of public accommodation* under the ADA because it serves to augment its chain of Carvel stores and Carvel ice cream novelties sold in grocery stores by providing the general public information on the various locations of the Defendant's owned and franchisee-owned Carvel stores and educate the general public as to the Carvel ice cream novelties and also to provide the general public with the ability to personalize Carvel ice cream cakes online and arrange for pick up at a local Carvel store.

67.     As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA. Plaintiff Gomez has suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

68.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

---

[8] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

69. A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired. The Defendant's website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

70. Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

71. More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

72. Further, the Defendant's website did\does not offer include the universal symbol for the disabled[9] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

73. Therefore, due to the Plaintiff's disability and the Defendant's failure to have its website adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's website.

---

[9] ♿▶🖥 ™, or HTML "Accessibility" link for those individuals who are visually impaired

74. The Defendant has violated the ADA (and continues to violate the ADA) by denying access to its website, www.carvel.com, to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the www.carvel.com website are ongoing.

75. As a result of the Defendant's inadequate development and administration of www.carvel.com, Plaintiff Gomez is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

76. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gomez injunctive relief; including an order to:

   a) Require Defendant Carvel Corporation to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.carvel.com to a statement as to Carvel Corporation's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

   b) Require Defendant Carvel Corporation to cease and desist discriminatory practices and if necessary to cease and desist operations of the website known as www.carvel.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

77. Plaintiff Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff Gomez is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Carvel Corporation.

WHEREFORE, Plaintiff Andres hereby demands judgment against Defendant Carvel Corporation and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Carvel Corporation has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order granting temporary, preliminary, and permanent injunction prohibiting Defendant Carvel Corporation from operating its website www.carvel.com without adequate accommodation for the visually impaired community;

c) The Court enter an Order requiring Defendant Carvel Corporation to update website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

d) The Court enter an Order requiring Defendant Carvel Corporation to clearly display the universal disabled logo[10] within its website, wherein the logo would lead to a page which would state Carvel Corporation's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of website www.carvel.com;

---

[10] 

e)  The Court enter an order requiring Defendant Carvel Corporation to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f)  The Court enter an Order directing Defendant Carvel Corporation to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to the website known as www.carvel.com.

g)  The Court enter an Order directing Defendant Carvel Corporation to establish a policy of web accessibility and accessibility features for the website known as www.carvel.com.

h)  The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

i)  That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 28th day of June, 2016.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*